UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

JOSEPH KUTER and
JACLYN BOWE

      Plaintiffs,

v.

MICHIGAN STATE UNIVERSITY,
THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY,
MSU SPORTS-MEDICINE CLINIC,
LAWRENCE G. NASSAR (Individually and Official Capacity),
WILLIAM STRAMPEL, LIANNA HADDEN,
DESTINY TEACHNOR-HAUK, DOUGLAS DIETZEL,
KATHIE KLAGES, JEFFREY R. KOVAN,
BROOKE LEMMEN, LOU ANNA SIMON, and
GARY STOLLAK Jointly and Severally,

      Defendants.

Lead Case No. 1:17-cv-0029-GJQ-ESC

1:18-cv-

_____ /

ROBERT J. LANTZY (P48035)
BUCKFIRE & BUCKFIRE, P.C.
Attorney for Plaintiff
29000 Inkster Road, Ste. 150
Southfield, MI 48034
(248) 569-4646
robert@buckfirelaw.com

_____ /

A civil action between these parties or other parties arising out of a similar transaction or occurrence alleged in the complaint has been previously filed in this court where it was given docket number 1:17-cv-00029-GJQ-ESC and was assigned to Judge Gordon J. Quist. The action remains pending

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs, JOSEPH KUTER and JACLYN BOWE, by and through their attorneys, BUCKFIRE & BUCKFIRE, P.C., and for their Complaint and Jury Demand against the above named Defendants, state as follows:

## JURISDICTION

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff JOSEPH KUTER as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University, The Board of Trustees of MSU, William Strampel, Lianna Hadden, Destiny Teachnor-Hauk, Douglas Dietzel, Kathie Klages, Jeffrey R. Kovan, Brooke Lemmen, Lou Anna Simon, Gary Stollak, and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiff JOSEPH KUTER, who was a minor when such assault took place.

2.      This action arises under the United States Constitution, Federal statutory law, and under the statutes and common law of the State of Michigan.

3.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), 1343(a)(4), 42 U.S.C § 1983 and 18 U.S.C. Sec. 1591, 1595. This court has supplemental jurisdiction of the Michigan State Law claims which arise out of the nucleus of operative facts common to Plaintiffs' federal claims pursuant to 28 U.S.C. §1367.

4.      The amount in controversy exceeds Fifteen Million Dollars ($15,000,000.00), excluding interests, costs, and attorney fees.

## VENUE

5.      Venue lies in the Western District of Michigan pursuant to 28 U.S.C § 1391(d), most of the events took place in Ingham County, which is located within the jurisdiction of the USDC Western District of Michigan.

## PARTIES

6.      Plaintiff JOSEPH KUTER  is a resident of New York County, New York.  At all times relevant hereto, Plaintiff was a minor when he was sexually assaulted, abused, and molested by Defendant NASSAR in 1997 and when co-Defendants committed the actions and inactions as described below.

7.      Plaintiff JACLYN BOWE is a resident of Wayne County, Michigan.  At all times relevant hereto, Plaintiff was a minor when she was sexually assaulted, abused, and molested by Defendant NASSAR (from 2005 through 2008), and when co-Defendants committed the actions and inactions as described below.

8.     At all times relevant, Defendant LAWRENCE NASSAR (hereinafter "NASSAR") was a resident of Ingham County, Michigan, and was a Doctor of Osteopathic Medicine. Defendant NASSAR is now serving a prison sentence in federal prison in Oklahoma City, Oklahoma.

9.      At all times relevant, Defendant MICHIGAN STATE UNIVERSITY (hereinafter, "MSU") was and continues to be a public university organized and existing under the laws of the state of Michigan. Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

10.    At all times relevant, Defendant THE BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY (hereinafter, "MSU TRUSTEES") was and is the governing body for Michigan State University.

11.    At all times relevant, Defendant MSU SPORTS-MEDICINE CLINIC (hereinafter "MSU SPORTS") was and continues to be a medical facility incorporated in the City of East Lansing, County of Ingham, State of Michigan, who employed Defendant NASSAR at the all relevant times herein.

12.    Defendants MSU, MSU TRUSTEES, and MSU SPORTS are hereinafter collectively referred to as the MSU DEFENDANTS.

13.    At all times relevant, MSU DEFENDANTS owned, operated, staffed, and supervised the MSU Sports-Medicine Clinic located on South Hagadorn Road.

14.    At all times relevant, Defendant WILLIAM STRAMPEL (hereinafter "STRAMPEL"), was the Dean of Osteopathic Medicine at Defendant MSU, and was the supervisor, manager and otherwise in charge of overseeing its employees, including Defendant NASSAR.

15.    At all times relevant, Defendant LOU ANNA SIMON (hereinafter "SIMON") was the President of Defendant MSU and was the supervisor, manager and otherwise in charge of overseeing MSU employees, including Defendant NASSAR.

16.    At all times relevant, Defendant BROOKE LEMMEN was and is a physician licensed to practice in the State of Michigan and was employed by Defendant MSU's Sports Medicine Clinic located on South Hagadorn Road.

17.    At all times relevant, Defendant GARY E. STOLLAK (hereinafter "STOLLACK") was and is a psychologist licensed to practice in the State of Michigan, and was employed by Defendant MSU as a professor in clinical psychology.

18.    At all times relevant, Defendant DOUGLAS DIETZEL (hereinafter "DIETZEL") was and is a physician licensed to practice in the State of Michigan, and was employed by the MSU DEFENDANTS as the Clinical Director of the MSU Sports Medicine and as the Team Orthopedic Surgeon for the MSU Department of Intercollegiate Athletics.

19.     At all times relevant, Defendant JEFFREY R. KOVAN (hereinafter "KOVAN") was and is a physician licensed to practice in the State of Michigan, and was employed by the MSU DEFENDANTS as the Director of MSU Sports Medicine.

20.     At all times relevant, Defendant LIANNA HADDEN (hereinafter "HADDEN") was and is an athletic trainer at Defendant MSU and was working with or in conjunction with Defendant NASSAR and the USAG.

21.     At all times relevant, Defendant DESTINY TEACHNOR-HAUK was and is an athletic trainer at Defendant MSU was working with or in conjunction with Defendant NASSAR and the USAG.

22.     At all times relevant, Defendant KATHIE KLAGES (hereinafter "KLAGES") was the head gymnastics coach at Defendant MSU and was working with or in conjunction with Defendant NASSAR and the USAG.

23.     At all times relevant, Defendant NASSAR was the designated Team Physician of the USAG, and was a faculty member of MSU DEFENDANTS' College of Osteopathic Medicine, a staff physician for Defendant MSU SPORTS, and the sports team doctor for Holt Public Schools through his employment with MSU DEFENDANTS and pursuant to a contract between MSU DEFENDANTS and Holt Public Schools, and thus was an employee, agent, and/or ostensible agent of Defendants USAG, MSU DEFENDANTS, and MSU SPORTS.

24.     For over 20 years, Defendant NASSAR had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars who referred athletes to his care.

25.     All Defendants are vicariously liable for the acts of Defendant Nassar.

## PLAINTIFF JOSEPH KUTER

26.     Plaintiff JOSEPH KUTER re-alleges and incorporates by reference the allegations contained in the previous paragraphs.

27.     Plaintiff was born on November 21, 1980.

28.     Plaintiff was an athlete that participated in track and field as well as gymnastics in high school and while attending Villanova University.

29.     Defendant Nassar was highly recommended to Plaintiff as a world renowned orthopedic sports medicine physician by virtue of his stature, status, and positions with MSU DEFENDANTS, Defendant MSU SPORTS, and the USAG.

30.     Plaintiff sustained a hip injury for which he initially sought treatment at Bryn Mawr Hospital in Pennsylvania. After a long and painful roadtrip from Pennsylvania to MSU to visit a friend, Plaintiff sought treatment with Defendant NASSAR at the MSU Clinic.

31.     Plaintiff had no reason to suspect that Defendant NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU DEFENDANTS, Defendant MSU SPORTS, and the USAG.

32.     Plaintiff, who was 17 years old, started treating with Defendant NASSAR at his MSU clinic and/or Defendant MSU SPORTS Medicine Clinic in 1997 for his hip injury.

33.     During the treatment session, Defendant NASSAR unexpectedly began touching Plaintiff's leg and buttocks so that he could provide massage therapy treatment.

34.     During the treatment sessions, Defendant NASSAR advised Plaintiff Kuter that he needed to perform "pelvic adjustments and re-alignments" to provide him with relief.

35.     During such "pelvic adjustment or re-alignment", Defendant NASSAR  massaged Plaintiff's body and gradually move his hands to Plaintiff's genital area.

36.     During the "pelvic adjustment or re-alignment", Defendant NASSAR digitally penetrated and stroked Plaintiff's anus without prior notice and without gloves or lubricant under the fraudulent guise of performing "treatment."

37.     The sexual assault consisting of digital penetration of Plaintiff's anus by Defendant NASSAR occurred under the guise of medical "treatment" and lasted for approximately 30 minutes while NASSAR verbally assured Plaintiff that such "treatment" would cure his injured and painful hip.

38.     While Defendant NASSAR was inappropriately touching Plaintiff's anus for his own sexual pleasure, he fraudulently explained the sexual assault as "medical treatment" by explaining that the anal penetration and massage would release or relax his pelvic floor muscles which would then allow NASSAR to perform an adjustment to Plaintiff's hip.

## PLAINTIFF JACLYN BOWE

39.     Plaintiff JACLYN BOWE re-alleges and incorporates by reference the allegations contained in the previous paragraphs.

40.     Plaintiff  JACLYN BOWE was born on October 14, 1990.

41.     Plaintiff JACLYN BOWE was a Michigan all-star softball player that injured her back during her childhood.

42.     Defendant Nassar was highly recommended to Plaintiff as a world renowned orthopedic sports medicine physician by virtue of his stature, status, and positions with MSU DEFENDANTS, Defendant MSU SPORTS, and the USAG.

43.     Plaintiff JACLYN BOWE  and her parents had no reason to suspect that Defendant NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU DEFENDANTS, Defendant MSU SPORTS, and the USAG.

44.     Plaintiff JACLYN BOWE treated with Defendant NASSAR at said MSU SPORTS MEDICINE CLINIC from 2005 through 2008 for her injured back.

45.     During these treatment sessions, Plaintiff who was in 8th grade at the time, was diagnosed with a fractured back by Defendant NASSAR.

46.     During these treatment sessions, Defendant NASSAR would often perform "pelvic adjustments and re-alignments".

47.     During each "pelvic adjustment or re-alignment", Defendant NASSAR would massage Plaintiff's body and gradually move his hands to Plaintiff's genital area.

48.     During each "pelvic adjustment or re-alignment", Defendant NASSAR digitally penetrated and stroked Plaintiff's vagina without prior notice and without gloves or lubricant under the fraudulent guise of performing "treatment.", and even did so with Plaintiff's father in the examination room.

49.     The sexual assault consisting of digital penetration of Plaintiff's vagina by Defendant NASSAR always occurred under the guise of medical "treatment" and occurred on multiple occasions throughout 2006, and would last for approximately 15 to 30 minutes depending on the visit.

50.     While Defendant NASSAR was inappropriately touching Plaintiff's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment to Plaintiffs hips and back.

51.     Plaintiff JACLYN BOWE was repeatedly sexually assaulted by Defendant NASSAR, at his MSU SPORTS medical office building in East Lansing, under the fraudulent guise of medical treatment.

## MSU DEFENDANTS

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

53.     At all times relevant hereto, the MSU DEFENDANTS were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan.

54.     Defendant Nassar was employed by MSU DEFENDANTS from approximately 1996 to 2016 in various positions including but not limited to:

a.      Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

b.      Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

c.      Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

d.      Team Physician, Defendant MSU's Men's and Women's Crew Team;

e.      Team Physician, Defendant MSU's Intercollegiate Athletics;

f.      Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

g.      Advisor, Student Osteopathic Association of Sports Medicine.

55.     As part of Defendant Nassar's employment and contractual duties with Defendant MSU DEFENDANTS, Defendant Nassar was responsible for spending between 50% to 70% of his time engaged in "Outreach" and/or "Public Services."

56.     A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendants USAG, which included high school athletes, including those affiliated Holt public Schools and Geddes' Twistars Gym.

57.     Upon information and belief, in 1997 or 1998 the MSU DEFENDANTS were informed of Defendant NASSAR's "treatment" in the form of vaginal penetration when a MSU youth gymnast complained to MSU gymnastics coach Kathie Klages of the actions consisting of sexual assault. Coach Kathie Klages discouraged the gymnast from filing a formal complaint and the MSU DEFENDANTS did not investigate the claim.

58.     In or around 1999 the MSU DEFENDANTS were again informed of Defendant Nassar's conduct by a MSU student athlete, after she complained to MSU employees, including trainers and her head coach Kelly Bert, that Defendant Nassar touched her vaginal area when treating an injured hamstring. Despite complaints to MSU representatives, concerns and allegations were not investigated and were not addressed.

59.     In 2000, MSU DEFENDANTS were again informed of Defendant Nassar's conduct when another MSU student athlete reported to Defendant MSU's employees, including trainers, including but not limited to Lianna Hadden and Destiny Teachnor-Hauk, that she was sexually assaulted and abused during "treatment" by Defendant Nassar. Yet again MSU failed to take any action in response to complaints regarding Defendant, NASSAR.

60.     Upon information and belief, the 200 complaints informed the MSU DEFENDANTS that Defendant NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females. The student athlete alleged:

a.  The victim approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. The victim complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment. The victim continued with the purported treatment;

b.  As the purported treatments continued, NASSAR became more bold, having the victim remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The victim, again, reported to Defendant MSU training staff, this time a higher ranking trainer. This trainer told the victim that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c.  When the victim went to see this individual, the victim was told by that individual that what happened to the victim was not sexual abuse, that NASSAR was a world renowned doctor, and that the victim was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The victim continued to see NASSAR for treatment;

d.  Finally, in or around 2001, the victim  refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the victim to declare herself medically inactive. The victim was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.

61.     Upon information and belief, in approximately 2002, the MSU DEFENDANTS were again informed of Defendant Nassar's conduct by a MSU student athlete after she complained to MSU employees, including trainers and her head coach Lianna Hadden, that Defendant Nassar touched her vaginal area during medical treatment.  Despite complaints to MSU representatives, concerns and allegations went unaddressed.

62.     In 2004, the MSU DEFENDANTS were again informed of Defendant Nassar's conduct when a minor female who was not a patient of NASSAR reported sexual abuse by NASSAR to MSU employee Dr. Gary Stollak who was a MSU Clinical Psychologist. Yet again MSU failed to take any action in response to complaints regarding Defendant NASSAR.

63.     Despite multiple complaints to MSU employees, agents, and representatives, the complaints informing the MSU DEFENDANTS of multiple counts of sexual assault by its employee and/or agent Defendant NASSAR went unaddressed in violation of reporting policies and procedures and Title IX, and in a manner that was reckless, deliberately indifferent, and grossly negligent.

64.     Because the MSU DEFENDANTS took no action to investigate the 1999, 2000, 2002, or 2004 complaints, and took no corrective action, from 2012 through 2015, under the guise of treatment, Plaintiffs, who were minors, were also allowed to be sexually assaulted, abused, and molested by Defendant NASSAR by nonconsensual vaginal penetration, and  nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant.

65.     Despite the multiple complaints to the MSU DEFENDANTS regarding Nassar's conduct, the MSU DEFENDANTS continued to permit Defendant NASSAR unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

66.     The MSU DEFENDANTS knew or should have known that Nassar had engaged in unlawful, sexually-related, conduct in the past and/or was continuing to engage in such conduct.

67.     The MSU DEFENDANTS, including but not limited to Defendants STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, and STOLLAK, had a duty to disclose these facts to Plaintiffs, their parents, and others, but instead choose to intentionally, with gross negligence, and/or or negligently, conceal this information.

68. Upon information and belief, the MSU DEFENDANTS, including but not limited to Defendants STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, and STOLLAK, knew or should have known about Defendant NASSAR's propensity and disposition to engage in sexual misconduct with minors before he sexually abused and molested these Plaintiffs.

69. The MSU DEFENDANTS failed to implement reasonable safeguards to avoid acts of unlawful sexual misconduct by Defendant NASSAR, including avoiding putting Defendant NASSAR in a position where contact and interaction with children was / is an inherent function.

## DEFENDANT NASSAR

70. Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

71. At all times relevant, Defendant NASSAR was acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

72. At all times relevant, including the years 1996 through 2016, Defendant NASSAR was acting in the scope of his employment, agency, and/or ostensible agency with the MSU DEFENDANTS.

73. At all times relevant, including the years 1996 through 2016, Defendant NASSAR acting in the scope of his employment, agency, and/or ostensible agency with the USAG.

74. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU SPORTS.

75. Defendant NASSAR is not and has never been a medical doctor of obstetrics or gynecology, nor urology or gastroenterology.

76. At all times relevant, Defendant NASSAR was employed by the MSU DEFENDANTS and practiced medicine at Defendant MSU's Sport's Medicine Clinic.

77. At all times relevant, Defendant NASSAR was appointed by the USAG as a certified athletic trainer and Osteopathic Physician for the gymnasts who trained for or were affiliated with USAG.

78. Defendant NASSAR's employment and/or agency with the USAG and MSU DEFENDANTS provided him unfettered access to hundreds of minor gymnasts.

79. During his employment, agency, and representation with the MSU DEFENDANTS and the USAG, Defendant NASSAR sexually assaulted, abused, and molested Plaintiffs and countless other minor gymnasts by engaging in nonconsensual sexual touching, assault, and harassment including, but not limited to, digital vaginal penetration under the fraudulent guise of medical treatment.

80.     For over 20 years, Defendant NASSAR had unfettered access to young female athletes through the MSU DEFENDANTS Sports Medicine Clinic, and through his involvement with MSU DEFENDANTS, USAG and Holt Public Schools, was recommended and/or referred and/or required to be the trainer and/or physician of the gymnasts associated therewith, including Plaintiffs.

81.     From approximately 1997 through 2015, under the fraudulent guise of treatment, Defendant NASSAR sexually assaulted, abused, and molested Plaintiffs, who were minors, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant.

82.     Through his position with MSU DEFENDANTS, his notoriety, and support by MSU DEFENDANTS and the USAG, Defendant NASSAR used his position of authority as a medical professional to abuse Plaintiffs without any reasonable supervision by MSU DEFENDANTS and/or USAG.

83.     Defendant NASSAR acted with the apparent authority of the USAG and/or the MSU DEFENDANTS.

84.     Defendant NASSAR preyed upon naïve, under aged, elite athletes suffering from legitimate injuries, often training and competing through excruciating pain, and manipulated them into believing he was trying to provide relief, while in fact he was molesting them for his own pleasure.

## COUNT I

FRAUDULENT CONCEALMENT
DEFENDANT NASSAR
AND VICARIOUS LIABILITY DEFENDANTS USAG, MSU DEFENDANTS, STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, & STOLLAK

85.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

86.     Plaintiffs hereby allege that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs claims, and that Plaintiffs had a cause of action against Defendant NASSAR, MSU DEFENDANTS, Individual MSU Defendants, and/or USAG, at the time of NASSAR's assaults upon Plaintiffs, made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.     making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.     making the statement, referring to his conduct, disguised as "treatment," as for back pain, shin splint pain, and/or other treatment for pain or injury suffered by Plaintiffs;

c.     making the statement, explaining, that his acts and/or conduct was "treatment;"

d.      making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

e.      making a statement, explaining to Plaintiffs that the position of his hand was in an appropriate place when it was not and while he was digitally penetrating Plaintiffs, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

87.      The material representation(s) to Plaintiffs were false, in that NASSAR was actually performing the assaults for his own sexual gratification and pleasure.

88.      When Defendant NASSAR made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist,

89.      Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs should believe that the sexual assault was instead medical "treatment" and should believe that the "treatment[s]" were proper, appropriate, and legitimate; that Plaintiffs should not believe that they had been sexually assaulted so that NASSAR could prevent Plaintiffs from discovering that she was sexually assaulted; that Plaintiffs should continue the "treatment[s]" so that NASSAR could continue to sexually assault Plaintiffs; that Plaintiffs should not question and/or report the conduct to appropriate authorities; and Plaintiffs should not reasonably believe and not be aware of a possible cause of action that she has / had against Defendant NASSAR, MSU DEFENDANTS, Individual MSU Defendants, and/or USAG.

90.      Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

a.       reasonably believed that the sexual assault was in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.       reasonably did not believe that she had been sexually assaulted;

d.       believed that she should continue the "treatment[s];"

e.      did not believe that she should question and/or report the conduct to appropriate authorities; and,

f.      did not believe that they had, and were not aware of, a possible cause of action against Defendant NASSAR, MSU DEFENDANTS, Individual MSU Defendants, and/or USAG.

91.      Plaintiffs thereby suffered injury, in that Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, including sleep deprivation, physical illness, severe emotional distress, shock, weight loss, humiliation, fright, grief, embarrassment,

loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

92.     Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.      making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.      making the statement, referring to his conduct, disguised as "treatment," for back pain, and/or other treatment for pain or injury suffered by Plaintiffs;

c.      making the statement, explaining, that his acts and/or conduct was "treatment;"

d.      making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

e.      making a statement, explaining to Plaintiffs that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiffs, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

93.     Concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.      prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

b.      did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

c.      did not abide by or follow The USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver;

d.      groomed Plaintiffs to gain their trust by affirmative acts;

94.     The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

95.     At all times relevant, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and operated within the scope of his employment and his negligence is imputed to the MSU Defendants.

96.     At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of MSU DEFENDANTS, MSU SPORTS, Individual MSU Defendants, and/or USAG, and operated within the scope of his employment and his negligence is imputed to MSU DEFENDANTS, MSU SPORTS, Individual MSU DEFENDANTS, and/or USAG.

97.     At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

98.     Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

a.      Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

b.      Plaintiffs were minors at the time of the assaults and "treatments;"

c.      Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal treatment was like because they had never experienced and/or had an intra-vaginal treatment before because they were minors and such examinations were not medically necessary at any relevant time;

d.      Due to the fraudulent representations by Defendant NASSAR, Plaintiffs did not know and/or understand that they were not being medically treated, but instead were being sexually assaulted;

e.      Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that NASSAR's "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

f.      Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

g.      Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

h.      Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

i.      Plaintiffs trusted Defendant NASSAR due to the recommendations and affiliation with MSU DEFENDANTS, MSU SPORTS, Individual MSU Defendants, and/or USAG;

j.      Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were in fact legitimate "treatments;"

k.      Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

l.      Plaintiffs were minors and young athletes, therefore were easily suggestible; and,

m.      Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

99.      At all times relevant, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

100.      At all times relevant, Defendant Nassar was an agent, apparent agent, servant, and employee of MSU DEFENDANTS, MSU SPORTS, Individual MSU Defendants and operated within the scope of his employment and his Fraudulent Concealment is imputed to MSU DEFENDANTS, MSU SPORTS, Individual MSU Defendants.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in his favor against Defendants and in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.


## COUNT II

### FRAUDULENT CONCEALMENT
### MSU DEFENDANTS & DEFENDANTS STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, & STOLLAK

101.      Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

102.      Plaintiffs hereby allege that MSU DEFENDANTS and Individual MSU Defendants committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims, by making material representations to Plaintiffs involving a past or existing fact at the time of Defendant NASSAR's sexual assaults, by representing:

a.      Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.      Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.      Defendant Nassar's conduct was "not sexual abuse,"

d.      Defendant Nassar was a "world-renowned doctor;" and,

e.      that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

f.      continuing to employ Defendant Nassar as a medical doctor thereby representing that Nassar was not a sexual predator despite actual and/or constructive knowledge that he is a sexual predator who engaged in acts of sexual abuse with minors at the MSU Sports Medicine Clinic;

103.    The material representation(s) to Plaintiffs were false, in that the MSU Defendants had actual knowledge of sexual abuse by Defendant Nassar from other students and student athletes at the MSU Sports Medicine Clinic and knew that the appropriateness of his "treatment[s]" had been questioned in the past, however, but continued to employ Defendant Nassar, thereby providing him unfettered access to hundreds of minor females including Plaintiffs.

104.    The MSU Defendants made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they had actual knowledge of sexual abuse by Defendant Nassar from other students and student athletes at the MSU Sports Medicine Clinic and knew that the appropriateness of his "treatment[s]" had been questioned in the past however continued to employ Defendant Nassar thereby providing him unfettered access to hundreds of minor females including Plaintiffs.

105.    The MSU Defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.      should believe that the "treatments" were in fact "treatments;"

b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      should not believe that she had been sexually assaulted;

d.      should not question and/or report the conduct to other authorities;

e.      should believe that Defendant Nassar was a legitimate doctor who did not commit sexual assault; and,

f.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or the MSU Defendants.

105.    Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that he had been sexually assaulted;

d.      reasonably believed that he should continue the "treatment[s];"

e.      reasonably believed that Defendant Nassar was a legitimate doctor who did not engage in sexual assault;

f.      did not believe that he should question and/or report the conduct to appropriate authorities; and,

g.      did not believe that he had and was not aware of a possible cause of action that he had against Defendant Nassar and/or MSU DEFENDANTS.

106.    Plaintiff thereby suffered injury, in that Plaintiff:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment" and sexual assault;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

106.    The MSU Defendants concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiff involving a past or existing fact by:

a.      Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.      Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.      Defendant Nassar's conduct was "not sexual abuse,"

d.      Defendant Nassar was a "world-renowned doctor;" and,

e.      that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

f.      continuing to employ Defendant Nassar as a medical doctor thereby representing that Nassar was not a sexual predator despite actual and/or constructive knowledge that he is a sexual predator who engaged in acts of sexual abuse with minors at the MSU Sports Medicine Clinic;

107.    The MSU Defendants concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

a.      ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;"

b.      did not create a policy to require adults, parents, chaperones, guardians, and/or caregivers presence during an examination of a minor or female by a physician; and,

c.      continuing to employ Defendant Nassar as a medical doctor thereby representing that Nassar was not a sexual predator despite actual and/or constructive knowledge that he is a sexual predator who engaged in acts of sexual abuse with minors at the MSU Sports Medicine Clinic;

108.    Plaintiffs did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that he had against Defendant Nassar and/or the MSU Defendants until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or shortly thereafter, for the following reasons among others:

a.      Plaintiffs reasonably relied on the Fraud committed by the MSU Defendants by the material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

b.      Plaintiffs were minors at the time of the assault and "treatment;"

c.      Plaintiffs did not know what a legitimate and appropriately performed intra-anal or intra-vaginal treatment was like because they had never experienced and/or had an intra-anal or intra-vaginal treatment before because they were minors and such examinations were not medically necessary at any relevant time;

d.      Due to the fraudulent representations by Defendant NASSAR to Plaintiffs, Plaintiffs did not know and/or understand that they were not being medically treated but instead were being sexually assaulted;

e.      Plaintiffs could not have possibly known because; at times, there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against the MSU Defendants and defendant Nassar concealed his abuse in the event a parent was in the exam room;

f.      Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

g.      Plaintiffs were minors and young athletes, therefore were easily suggestible; and,

h.      Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

i.      Plaintiffs reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

j.      Plaintiffs trusted Defendant MSU that they would protect Plaintiffs from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatment[s]," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

k.      Plaintiffs were never told by Defendant MSU that Defendant Nassar's conduct and "treatment[s]" were inappropriate and sexual assault, to the contrary Plaintiffs were told that Defendant Nassar's conduct and "treatment[s]" were appropriate and legitimate "treatment[s]," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing";

l.      Plaintiffs reasonably relied on MSU DEFENDANTS to protect them.

109.    The actions and inactions of the MSU Defendants, including all named individual Defendants, and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

110.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of MSU DEFENDANTS and operated within the scope of his employment and his Fraudulent Concealment is imputed to MSU DEFENDANTS.

111.    The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU DEFENDANTS, as described in the preceding paragraphs, constituted Fraudulent Concealment.

112.    At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of MSU DEFENDANTS, were agents, apparent agents, servants, and employees of MSU DEFENDANTS, and operated within the scope of their employment and their Fraudulent Concealment is imputed to MSU DEFENDANTS.

113.    At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

114.    The acts and/or omissions of MSU DEFENDANTS and Individual MSU Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiffs.  Plaintiffs therefore request an award of punitive and exemplary damages. Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorney fees and costs.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants and in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.


## COUNT III

## FRAUD AND MISREPRESENTATION

## MSU DEFENDANTS & INDIVIDUAL MSU DEFENDANTS

115.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

116.    From approximately 1996 to September 2016, the MSU Defendants and USAG represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

117.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU, a National Team Physician with the USAG, and the sports doctor for Holt Public Schools, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

118.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

119.    As of 1999, 2000, 2002, and 2004, the MSU Defendants knew their representations of Defendant Nassar were false as four individuals had complained of Defendant Nassar's conduct to MSU representatives.

120.    Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the 1999, 2000, 2002, or 2004 complaints.

121.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

122.    The MSU Defendants failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.

123.    Until 2016 the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

124.    Plaintiffs relied on the assertions of the MSU Defendants and Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

125.    Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

126.    As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT IV

## VIOLATIONS OF TITLE IX  20 U.S.C. §1681(a), et seq.
## THE MSU DEFENDANTS

127.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

128.    Title IX's statutory language states, "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

129.    Each Plaintiff is a "person" under the Title IX statutory language.

130.    Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), et seq.

131.    Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

132.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.

133.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment to students, athletes, and the public.

134.    Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal touching of Plaintiffs' vaginal area constitutes sex discrimination under Title IX.

135.    As early as 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

136.    Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation  in or around 1999, 2000, 2002, and/or 2004 by four separate individuals, three of whom were students of Defendant MSU.

137.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following the 1999, 2000, 2002, and 2004 complaints of sexual assault, abuse, and molestation..

138.    The MSU Defendants failed to adequately supervise even though the MSU Defendants had actual knowledge Nassar posed a substantial risk of additional sexual abuse of females to whom he had unfettered access.

139.    After the 1999, 2000, 2002, or 2004 complaints, Defendant Nassar continued to sexually assault, abuse, and molest individuals, including but not limited to Plaintiffs.

140.    The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

a.      failing to investigate and address the 1999, 2000, 2002, or 2004 allegations as required by Title IX;

b.      failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

141.    The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

142.    The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

a.      A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

b.      That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

143.    The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

144.    Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment on and off school premises.

145.    The MSU Defendants' failure to promptly and appropriately investigate, remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to harassment and a sexually hostile environment.

146.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      suffered related physical manifestations thereof, including sleep deprivation, physical illness, severe emotional distress, shock,  humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT V

## VIOLATION OF CIVIL RIGHTS - 42 U.S.C. § 1983

## THE MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK, AND DEFENDANT NASSAR

147.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

148.    Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

149.    Plaintiffs, enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

150.    At all times relevant, MSU DEFENDANTS, Individual MSU Defendants, and Defendant NASSAR were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

151.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

152.     The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

153.     As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

154.     The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

155.     Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event..."

156.     Defendant MSU's aforementioned internal policies were violated in or around 1999 when a female athlete reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

157.     Defendant MSU's aforementioned internal policies were violated in 2000 when another student athlete  reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

158.     Defendant MSU's aforementioned internal policies were violated in 2002 when another student athlete  reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

159.     Defendant MSU's aforementioned internal policies were violated in 2004 when a non-student  reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

160.     The MSU Defendants' failure to address the 1999, 2000, 2002, and 2004 complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar specifically Plaintiffs.

161.     Defendants failed to adequately and properly investigate the complaints of individuals similarly-situated to Plaintiffs, including but not limited to, failing to:

a.     perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiff after receiving complaints in 1999, 2000, 2002, and 2004;

b.      thoroughly review, investigate, and react to all complaints of sexual assault;

c.      thoroughly review and investigate policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

d.      recognize sexual assault when reported in 1999, 2000, 2002, and 2004 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and,

e.      MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

162.    Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

163.    By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

164.    The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

165.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

166.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

167.    The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiffs. Plaintiffs therefore request an award of punitive and exemplary damages.

168.     Plaintiffs have retained private counsel to represent them in this matter and is entitled to an award of attorney fees and costs pursuant to 42 USC 1988.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT VI

## FAILURE TO TRAIN AND SUPERVISE - 42 U.S.C. § 1983
## MSU DEFENDANTS

169.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

170.     The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

171.     The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

a.      Perceive, report, and stop inappropriate sexual conduct on campus;

b.      Provide diligent supervision over student-athletes and other individuals;

c.      Report suspected incidents of sexual abuse or sexual assault;

d.      Report and investigate complaints of sexual abuse or sexual assault;

e.      Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

f.      Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

g.      Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

h.      The above list of duties is not exhaustive.

172.     The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

173.     As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

174.     As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

175.    The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiffs.  Plaintiffs therefore request an award of punitive and exemplary damages.

176.    Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorney fees and costs pursuant to 42 USC 1988.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT VII

## GROSS NEGLIGENCE

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, STOLLAK AND DEFENDANT NASSAR

177.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

178.    The MSU Defendants owed Plaintiffs a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

179.    Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

180.    By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

181.    The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

182.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

183.    The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

184.    The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

185.    The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

186.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, weight loss, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

187.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants who was operating within the scope of his employment and his actions are imputed to Defendant the MSU Defendants.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.


## COUNT VIII

## NEGLIGENCE

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK AND DEFENDANT NASSAR

188.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

189.     The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

190.     By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

191.     Defendant Nassar owed Plaintiffs a duty of ordinary care.

192.     The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

193.     The MSU Defendants had notice by and through its employees, agents, and/or representatives as early as 1999, and again in 2000, 2002, and 2004 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

194.     The MSU Defendants should have known of the foreseeability of sexual abuse by Defendant NASSAR with respect to the minor girls and young women Nassar regularly encountered and "treated" in youth, high school, and collegiate sports.

195.     The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

196.     Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

197.     As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.       could not stop the sexual assault;

b.       continued to undergo the "treatment[s]" and sexual assaults;

c.       and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, weight loss, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.       were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

198.     At all times relevant, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants who was operating within the scope of his employment and/or

Nassar's actions were aided by his agency relationship with MSU Defendants and therefore Nassar's actions are imputed to the MSU DEFENDANTS.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT IX

## GROSSLY NEGLIGENT SUPERVISION

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK

199.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

200.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

201.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

202.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

203.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

204.    The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

205.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

206.    As a direct and/or proximate result of the MSU Defendants' grossly negligent supervision, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT X

## GROSSLY NEGLIGENT FAILURE TO WARN OR PROTECT

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK

207.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

208.    The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

209.    As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

210.    The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

211.    The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

212.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

213.    The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

214.    The MSU Defendants breached their duties to protect Plaintiffs by failing to:

a.      respond to allegations of sexual assault, abuse, and molestation;

b.      detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

c.      investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

215.    The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

216.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

217.    As a direct and/or proximate result of the MSU Defendants grossly negligent failure to warn or protect, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XI

## GROSSLY NEGLIGENT RETENTION

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK

218.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

219.     The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

220.     The MSU Defendants were grossly negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

221.     The MSU Defendants were grossly negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

222.     The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

223.     The aforementioned gross negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

224.     As a direct and/or proximate result of the MSU Defendants' grossly negligent retention, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## MSU DEFENDANTS, INCLUDING STRAMPEL, HADDEN, TEACHNOR-HAUK, DIETZEL, KLAGES, KOVAN, LEMMEN, SIMON, AND STOLLAK

225.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

226.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

227.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

228.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

229.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

230.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

231.    The MSU Defendants' conduct as described above was intentional and/or reckless.

232.    As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.     could not stop the sexual assault;

b.     continued to undergo the "treatment[s]" and sexual assaults;

c.     and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.     were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

    WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XXI

## ASSAULT & BATTERY
## DEFENDANT NASSAR

233.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

234.     The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

235.     Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with Plaintiffs' body and person.

236.     Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting her to an imminent battery and/or intentional invasions of her rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

237.     Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration.

238.     Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

239.     As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.       could not stop the sexual assault;

b.       continued to undergo the "treatment[s]" and sexual assaults;

c.       and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.       were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

       WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XXII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## DEFENDANT NASSAR

240.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

241.    Defendant Nassar used his authority and position with MSU DEFENDANTS, the USAG, and Gedderts' Twistars USA Gymnastics Club, to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals, minors, and young adults.

242.    Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

243.    A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

244.    Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs for years, at least from 2001 through 2014.

245.    Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

246.    As a direct and/or proximate result of Defendant Nassar's outrageous conduct Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.


## COUNT XXIII

## FRAUD AND MISREPRESENTATION
## DEFENDANT NASSAR

247.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

248.    From approximately 1996 to September 2016, Defendant Nassar represented to Plaintiffs and the public that he was a competent, ethical, and safe physician.

249.    By representing that he was a team physician and athletic physician at Defendant MSU and Holt Public Schools, and a National Team Physician with The USAG, and Geddert's Twistars Gym,  Defendant Nassar represented to Plaintiffs and the public that he was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

250.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of individuals at MSU, Twistars Gym, Karolyi Ranch, USAG sanctioned / sponsored meets / events, and other locations.

251.    Specifically, Defendant Nassar's false representations include but are not limited to the following:

a.    making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.    making the statement, referring to his conduct, disguised as "treatment," as for back pain, and/or other treatment for pain or injury suffered by Plaintiffs;

c.    making the statement, explaining, that his acts and/or conduct was "treatment;"

d.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

e.    making a statement, explaining to Plaintiffs that the position of his hand was in an appropriate place when it was not and while he was digitally penetrating Plaintiffs, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

252.    The material representation(s) to Plaintiffs were false, in that Defendant Nassar was actually engaging in conduct for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

253.    Plaintiffs relied on the assertions of Defendant Nassar and Plaintiffs continued to seek treatment of Defendant Nassar even after Defendant Nassar became aware of concerns and complaints of his "treatment."

254.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

255.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted and/or relied upon by Plaintiffs, in that Plaintiffs:

a.    should believe that the "treatments" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted;

b.    should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue the "treatment[s]" so that he could continue to sexually assault them; should not question and/or report the conduct to appropriate authorities; and,

c.    should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

256.    Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.    prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

b.    did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

c.    did not abide by or follow The USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver;

d.    groomed Plaintiffs to gain her trust by affirmative acts such as providing gifts to Plaintiffs and befriending Plaintiff while in a vulnerable position in order to be seen as the "good guy";

257.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted fraud.

258.    Despite the numerous complaints about his sexual misconduct, including but not limited to those presented to MSU officials in 1999, 2000, 2002, and 2004, Defendant Nassar continued to hold himself out as a competent and safe physician.

259.    Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant Nassar's fraudulent misrepresentations regarding Defendant Nassar.

260.    At all times relevant, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and operated within the scope of his employment and his negligence is imputed to the MSU Defendants.

261.    At all times relevant, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

262.    As a direct and/or proximate result of Defendant Nassar's fraudulent misrepresentations, Plaintiffs suffered and continue to suffer injury including but not limited to:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults;

c.      and suffered related physical manifestations thereof, sleep deprivation, physical illness, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body;

d.      were prevented and will continue to be prevented from performing their daily activities of living and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

263.    At all times relevant, Defendant Nassar was an agent, apparent agent, servant, and employee of the USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to the USAG.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XXV

## VICARIOUS LIABILITY OF MSU DEFENDANTS

264.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

265.    By virtue of employment, representation and/or association with all named individual Defendants, MSU Defendants are vicariously liable for all acts of negligence committed by the individual Defendants and for all damages suffered by Plaintiffs.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XXVI

## VIOLATION OF MICHIGAN CHILD PROTECTION LAW
## DEFENDANT NASSAR, MSU DEFENDANTS & USAG

266.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

267.    The above described acts and incidents pertaining to Plaintiffs constituted child abuse and/or neglect and/or reasonable cause to suspect child abuse and/or neglect, as defined under MCL 722.622.

268.    Pursuant to MCL 722.621, et seq., each and every Defendant, including MSU Defendants and The USAG under the doctrine of vicarious liability for the actions and non-actions of its employees / agents, had a duty to report suspected child abuse and/or neglect of the then minor Plaintiffs to the Department of Social Services / Family Independence Agency and/or Protective Services, as well as to local law enforcement officials.

269.    Defendant NASSAR was likewise a mandatory reporter and also owed the duty to then minor Plaintiff to report all suspected neglect and abuse of minor Plaintiffs to the appropriate authorities – in other words – under the Michigan Child Protection Law, Defendant NASSAR was required to report his abuse of the then minor Plaintiffs to the authorities.

270.    Defendants' failure to report the suspected child abuse and/or neglect of then minor Plaintiffs proximately caused then minor Plaintiffs' sexual abuse and/or continued sexual abuse at the hands of Defendant NASSAR.

271.    MCL 722.633 holds any person responsible for reporting suspected child abuse and/or neglect civilly liable for the damages proximately caused by the failure to report same.

272.    That as a result of Defendants' failure to report the suspected child abuse and/or neglect of then minor Plaintiffs, Plaintiffs suffered the numerous injuries and damages as more particularly described above.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.

## COUNT XXVII

### SEX TRAFFICKING
### TVPRA, 18 U.S.C. Sec. 1591, 1595
### AGAINST THE MSU DEFENDANTS AND NASSAR

273.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs.

274.    Defendant Nassar provided medical care and treatment to patients in multiple states, including but not limited to the State of Michigan.

00508458                                        39

275.    The MSU Defendants also promoted Defendant Nassar's skill and employment to people outside of the State of Michigan including, upon information and belief, through its promotion of Nassar on its websites, which were accessible to persons in multiple states.

276.    Upon information and belief, through multi-state medical practice and promotion, Nassar built a reputation and prominence that assisted his ability to obtain employment at MSU and to obtain patients, including Plaintiffs.

277    Nassar knowingly made false material statements to Plaintiffs regarding his care and treatment of them, misrepresenting to Plaintiffs that his actions toward them were and would be in furtherance of proper and necessary medical treatment and procedures.

278.    Nassar knew the statements were false at the time that he made them because he was educated and skilled in proper medical treatment and procedures, and he knew that he did and would touch and interact with Plaintiffs in a manner that was not medically proper or necessary, but rather was for the purpose of his own sexual gratification.

279.    Nassar knew that Plaintiffs would rely on his false representations because he was a prominent physician and they were lay patients with no medical knowledge or experience against which to gauge Nassar's conduct.

280.    In addition, the nature of Plaintiffs' and Nassar's physician-patient relationship imported a degree of legitimacy and materiality to Nassar's misrepresentations regarding the nature and necessity of his medical "treatments".

281.    Nassar intended for Plaintiffs to rely on his misrepresentations because he offered them in explanation of his sexually abusive conduct, and he knew that Plaintiffs were reliant upon Nassar's medical care and information for their physical health.

282    Plaintiffs reasonably relied on Nassar's misrepresentations to their detriment, suffering years of sexual abuse, with the attendant emotional and mental harm, as a result.

283.    In addition, Nassar coerced Plaintiffs to comply with his sex acts.

284.    Pursuant to 18 U.S.C. Sec. 1591(e)(2), "coercion" includes "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm" to that person.

285.    In this instance, Nassar committed sex acts under the guise of medical treatment for serious physical injury.

286.    Plaintiffs reasonably believed that compliance with Nassar's directions and submission to his actions were necessary for their medical treatment and, conversely, non- compliance could result in serious harm.

287.    Nassar knew that Plaintiffs and his other patients depended on him for medical care and understood that compliance with his directions, treatment plan and actions were necessary for their physical health.

288.     Nassar's scheme, plan and pattern was to exploit this fear and cause Plaintiffs and multiple female patients to believe that refusal or failure to submit to his sex acts, committed under the guise of medical care, would result in serious physical harm.

289.     Thus, knowingly, and consistent with his *modus operandi*, Nassar employed fraud and coercion to entice and obtain Plaintiffs for the purpose of causing Plaintiffs to engage in commercial sex acts.

290.     18 U.S.C. Sec 1591(e)(3) broadly defines a "commercial sex act" as "*any* sex act, on account of which *anything* of value is given to or received by *any* person.

291.     Congress's use of broad and expansive language in its statutory definition of a "commercial sex act", including the words "any" and "anything" compel a liberal reading of the statute.

292.     The sexual misconduct alleged by Plaintiffs, including sexual touching of their buttocks and digital penetration of their vaginas, constitute "sex acts" within the meaning of 18 U.S.C. Sex 1591.

293.     The sex acts were "commercial" because a person received something of value on account of the sex acts.

294.     Among other things, on account of Nassar's sexual abuse, committed under the guise of medical care, the following things of value were received by persons:

        a.     Nassar received financial remuneration in payment for his "treatment" of Plaintiffs;

        b.     The MSU Defendants received financial remuneration in payment for Nassar's "treatment" of Plaintiffs; and

        c.     Plaintiffs received access to medical care and information, including referrals to physical therapy.

295.     For these reasons, Defendant Nassar's conduct constitutes sex trafficking in violation of 18 U.S.C. Sec 1591, for which he is liable to Plaintiffs for the substantial harm caused.

296.     The MSU Defendants are vicariously liable for Nassar's conduct because, at all relevant times, Nassar acted as their employee and agent, over whom the MSU Defendants possessed and exercised control.

297.     The MSU Defendants employed Nassar at the MSU Sports Medicine Clinic.

298.     Upon information and belief, Nassar was subject to MSU Defendants' employee policies and procedures.

299.     Upon information and belief, Nassar was subject to the MSU Defendants' employee policies and procedures.

300.    Upon information and belief, Nassar was supervised by MSU personnel, including Defendants Strampel and Kovan.

301.    In his role as an employee and agent of the MSU Defendants, and at facilities believed to be owned, operated and controlled by the MSU Defendants, Nassar sexually abused female patients, including Plaintiffs.

302.    As early as 1997 or 1998, MSU was notified of Nassar's sexual abuse of female patients.

303.    Over the following 20 years, multiple female patients reported Nassar's sexual abuse to the appropriate persons and MSU.

304.    The MSU Defendants failed to prevent their employee and agent from continuing to abuse female patients, resulting in the sexual abuse of multiple female patients, including the commission of sex acts upon which Plaintiffs bring their sex trafficking claim.

305.    As a result, the MSU Defendants are vicariously liable for Nassar's actions.

        WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor against Defendants in an amount in excess of Fifteen Million Dollars ($15,000,000.00), exclusive of costs, interest and attorney fees.


A JURY TRIAL IS HEREBY DEMANDED ON ALL ISSUES SO TRIALABLE BY JURY.

                        Respectfully submitted,



                        /s/ Robert J. Lantzy
                        ROBERT J. LANTZY (P57013)
                        BUCKFIRE & BUCKFIRE, P.C.
                        Attorney for Plaintiffs
                        29000 Inkster Road, Ste. 150
                        Southfield, MI 48034
                        (248) 569-4646
                        robert@buckfirelaw.com



DATED:  September 6, 2018